UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X   Docket No.: 23-CV-08685 (MKV)
D.C. KEENAN & ASSOCIATES

                                 Petitioner,   **RESPONDENTS'**
                                                                               **REPLY AFFIRMATION**
  -against-   **TO PETITIONER'S**
                                                                                **OPPOSITION AND IN**
CHARLES WISELL and LISPSIG SHAPEY   **FURTHER SUPPORT OF**
MANUS & MOVERMAN, P.C.   **CROSS-MOTION TO MODIFY**
                                                                                **AWARD**
                                 Respondents.
-----------------------------------------------------------X

      **Kenneth J. Gorman, Esq.**, an attorney duly admitted to practice in the State of New York, hereby affirms that the following statements are true under penalties of perjury:

      1.      I am of counsel to Pollack, Pollack, Isaac & DeCicco, LLP, special and appellate counsel to respondents Charles Wisell ("Wisell") and Lipsig Shapey Manus & Moverman, PC ("Lipsig") (collectively "respondents") in the above captioned matter and am familiar with the facts and circumstances of this matter based upon a review of the file maintained by my office.

      2.     This affirmation is submitted in reply to the opposition paper submitted by petitioner D.C. Keenan & Associates' ("D.C. Keenan" or "petitioner") and in further support of respondents' cross-motion to (1) vacate the arbitration award on the ground that Lipsig was not a signatory to the arbitration agreement and was not a party to the arbitration proceedings and because the award is irrational as Wisell does not have the legal authority to force the Lipsig firm to pay the award under the common law and under Partnership Law §20(3)(e) and because the award is irrational given that award amounts to 20% of the Lipsig firm's fee, not 10%; or (2) in the alternative, modify the arbitration award reducing it from $268,028.02 to $134,014.01, 10% of Wisell's fee.

3. Assuming familiarity with the papers before this Court, respondents respond directly to D.C. Keenan's arguments.

## DISCUSSION

### POINT I

### THE ARBITRATOR HAD NO JURISDICTION OVER LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C. AS IT WAS NOT A SIGNATORY TO THE ARBITRATION AGREEMENT AND BECAUSE A PARTNER CANNOT BIND THE PARTNERSHIP TO SUBMIT TO ARBITRATION UNDER PARTNERSHIP LAW §23(3)(e)

4. As noted in respondents' cross-motion, under the FAA and New York law, "arbitrators do not have the power to bind a party" that is "not a party to the arbitration contract or a voluntary participant in the arbitration proceeding." American Renaissance Lines, Inc. v. Saxis S.S. Co., 502 F.2d 674, 677 [2d Cir. 1974] [finding alleged alter egos of respondent were not bound by arbitration award or arbitrator's jurisdiction where they were neither parties to the arbitration agreement nor the arbitration proceedings].

5. Under these circumstances, the arbitrator had no jurisdiction over the Lipsig firm, who was never a signatory to the arbitration agreement. "Moreover, the alleged interrelatedness of nonarbitrable and arbitrable claims, standing alone, is not enough to subject nonsignatories to arbitration" (5 N.Y. Jur. 2d Arbitration and Award §81, citing, Oxbow Calcining USA Inc. v. American Indus. Partners, 96 AD3d 646 [1st Dept. 2012]; Mionis v. Bank Julius Baer & Co., Ltd., 301 AD2d 104 [1st Dept. 2002]).

6. In addition, contrary to what petitioners argue, "[u]nless authorized by the other partners, less than all of the partners have no authority to submit a partnership claim or liability to arbitration" (5 N.Y. Jur. 2d Arbitration and Award §27, citing, Partnership Law §20(3)(e)). Yet, petitioner argues that Lipsig is a proper party to this matter because there was no evidence that Wisell lacked authority. Petitioner is incorrect, as "[t]he burden of proof is on the party demanding

2

arbitration" (5 N.Y. Jur. 2d Arbitration and Award §116, citing, Matter of Cusimano v. Berita Realty, LLC, 103 AD3d 720 [2d Dept. 2013]; Astoria Equities 2000 LLC v. Halletts A Dev. Co., LLC, 47 Misc. 3d 171 [Sup. Ct., Queens County 2014]).

7. In the instant matter, petitioner presented no testimonial or documentary evidence regarding Wisell's authority to blindly bind the Lipsig firm to an arbitration agreement it had nothing to do with. The arbitrator, Justice Saxe, pointed this out at the hearing, noting that the Lipsig firm did not sign the agreement, was never served with a notice of intention to arbitrate and was not a party to the arbitration proceeding (**Exhibit 36**, Arbitration Transcript, p. 18). Moreover, Justice Saxe further pointed out that since petitioner drafted the agreement, it had to be construed against the drafter, not the party who never signed, let alone reviewed, the agreement.

8. Petitioner mischaracterizes respondents' position, stating that "Lipsig's argument essentially boils down to a claim that Wisell went rogue when he agreed to take on the Vidals as clients, that Wisell lacked apparent authority to do so and enter into these contractual agreements, that none of the other partners knew Wisell was doing this and Lipsig would not agree to take this case and enter into this contractual agreement, and most importantly, that neither Lipsig nor Wisell told Keenan that Wisell lacked authority to do what he did" (Genis MOL, Doc. 15, pp. 3-4, ¶22).

9. Once again, petitioner is incorrect, as the undisputed facts show otherwise. In this vein, Wisell testified that he was employed by the Lipsig when he signed the agreement; he never testified that he signed the Agreement in his capacity as a partner. Moreover, petitioner overlooks the fact that Wisell, who brought the case to Lipsig, had an agreement with the Lipsig firm, agreeing to split the attorneys' fee in half with the firm (**Exhibit 36**, Arbitration Transcript, pp. 162-163). As the Agreement only authorized the arbitrator to make an award based on the fee Wisell received in the case, it is clear that the Lipsig firm was not bound by this agreement.

10. The only evidence that petitioner produced in support of this argument is an undated screenshot of the Lipsig firm's website where Wisell is listed as partner. Aside from the fact that there was no evidence as to when this screenshot was obtained before Wisell executed the Agreement, Lipsig could not be bound by any agreement he signed under Partnership Law §20(3)(e). Petitioner's arguments, to the contrary, are easily resolved in respondents' favor.

11. "As a general rule, persons or entities who are not parties to an arbitration agreement cannot be compelled to arbitrate thereunder. Moreover, the alleged interrelatedness of nonarbitrable and arbitrable claims, standing alone, is not enough to subject nonsignatories to arbitration" (5 N.Y. Jur. 2d Arbitration and Award §81, citing, CDC Capital Inc. v. Gershon, 282 AD2d 217 [1st Dept. 2001]; Glasser v. Price, 35 AD2d 98 [2d Dept. 1970]; East Coast Servs. v. Silverite Constr. Co., 164 Misc. 2d 226 [Sup. Ct., Queens County 1995]; see also, Besser v. Miller, 12 AD3d 1118 [4th Dept. 2004] [holding that the beneficiary of a trust could not be compelled to arbitrate his claim against a brokerage firm and a related individual for alleged violation of the deceptive trade practices statute when there was no evidence that the parties to the brokerage agreement intended for the beneficiary to be bound by the arbitration clause therein].

12. Aside from failing to address the cases cited in respondents' moving papers addressing Partnership Law §20(3)(e), the cases petitioner relies on are inapposite. For instance, in Application of Camhi, 28 Misc. 2d 93, 95 [Sup. Ct., NY County 1960], revd., 13 AD2d 752 [1st Dept. 1961], which involved the enforcement of a collective bargaining agreement, the court correctly noted "[t]his is not the situation…where a third party seeking to enforce an agreement with a partnership, proceeds against an individual partner without first proceeding against the partnership". Thus, if petitioner wanted to include Lipsig, who did not sign the Agreement, as a party to this arbitration, at the very least, it had to serve it with a notice of intent to arbitrate, which

it failed to do (see, 5 N.Y. Jur. 2d Arbitration and Award §161, citing, inter alia, CPLR 7511(b)(1)(iv), 7511(b)(2)(i)).

13. Petitioner's reliance on Stein-Tex, Inc. v. Scappatillio, 193 Misc. 402 [Sup. Ct., NY County 1948], mod sub nom., Stein-Tex, Inc. v. Scappatillio, 275 AD 749 [1st Dept. 1949] is equally unavailing given that "record disclose[d] that the respondents *were given due notice of every step taken in the arbitration proceedings and never once urged that Scappatillio was without authority to sign the order-contract in the form signed*" (emphasis added), which was never the case here. Moreover, in Stein-Tex., Inc., Inc., the respondents, unlike Lipsig, stated they were willing to join in an arbitration if the court directed a new hearing.

14. There is no support for petitioner's argument that "[m]ost of the cases that do exist seem to contemplate the law as precluding a partner from compelling an arbitration between the partnership and individual partner(s) unless all parties had agreed" (Genis MOL, p. 7, ¶43, citing, Alam v Ahmad, 190 AD3d 471 [1st Dept. 2021]. Indeed, it is difficult to conceptualize petitioner's interpretation of the statute when it clearly states that a partner cannot "Submit a partnership claim or liability to arbitration or reference".

15. Petitioner's argument that Partnership Law §20(3)(e) is preempted by 9 U.S.C. §2 of the Federal Arbitration Act because it could deprive a federal district court of diversity jurisdiction is without merit, as there is nothing contained in the Federal statute that conflicts with Partnership Law §20(3)(e). Petitioner's argument is nonsensical and contrary to federal appellate decisional law (see e.g., Badgerow v. Walters, 596 US 1, 8 [2022], citing, Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 US 576, 582 [2008]; Vaden v. Discover Bank, 556 US 49, 59 [2009] [Were it otherwise, every arbitration in the country, however distant from federal concerns, could wind up in federal district court]). Indeed, this is a simple concept which petitioner is trying to complicate.

According to petitioner's logic, any partner can be bound by an arbitration agreement if it meant keeping the matter in federal court.

16. This is because "arbitration is a matter of contract" and "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 648-649 [1986]. "The law of contracts is not otherwise changed but continues to be as applicable to a provision for arbitration as it is to any other provision of a contract, and consequently, arbitration agreements are subject to the usual contractual requisites" (23 Carmody-Wait 2d §141:13, citing, inter alia, 23 Carmody-Wait 2d §141:13, Maynard v. Smith, 206 AD3d 900 [2d Dept. 2022] [Enforceability of arbitration agreements is governed by rules applicable to contracts, generally].

17. Petitioner's argument is also procedurally unconstitutional as enforcing the award violates the Lipsig firm's due process rights given that "all parties to [an arbitration] proceeding are… entitled to notice and an opportunity to be heard." (Miss Universe L.P. v. Monnin, 952 F. Supp. 2d 591, 603 [SDNY 2013].

18. There is no merit to petitioner's assertion that respondents are attempting to relitigate issues that were resolved against them, which is simply not true. Petitioner fails to address the arguments pertaining the irrationality of the award, making it impossible to comply with. Petitioner merely argues that because Wisell was a partner, Lipsig must pay. However, such circular reasoning does not carry any weight when it fails to address the merits.

19. In their cross-motion, respondents emphasized that there was no dispute that Wisell and Lipsig had an agreement to split the attorneys' fee 50-50 and Lipsig was not a signatory to the Agreement. Yet, the award states that Wisell "is obligated to remit to [DC Keenan] ten percent

(10%) of the total amount received, as a legal fee, by the Lipsig Law Firm" (Petitioner's Exhibit C, Final Arbitration Award Decision).

20. As Wisell does not have the legal authority to force Lipsig to pay any portion of its attorney's fee to D.C. Keenan, the award must be vacated given that "it defies common sense [and]/or shocks the court's sense of fairness" (5 N.Y. Jur. 2d Arbitration, supra, at §230, citing, inter alia, Matter of Polito v. New York City Dept. of Educ., 104 AD3d 604 [1st Dept. 2013]; Matter of Gongora v. New York City Dept. of Educ., 98 AD3d 888 [1st Dept. 2012].

21. Petitioner's failure to adequately address the irrationality of the amount of the award is one more reason why the petition should be denied, and the cross-motion granted. As there was no dispute that Lipsig split the fee with Wisell, the arbitrator's awarded of 10% of Lipsig's fee should be $134,014.01, not $268,028.02. Petitioner's assertion that Lipsig should pay 10% of the entire award merely because Wisell signed the agreement will not sufficient under these circumstances.

**WHEREFORE,** for the reasons set forth above, this Court should deny petitioner's petition to confirm the arbitration award, and grant respondents' cross-motion to vacate the award, grant any other relief this honorable Court deems just, proper, and equitable.

Dated: New York, New York
December 6, 2023

**Kenneth J. Gorman, Esq.**