```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

D.C. KEENAN & ASSOCIATES,

                    Petitioner,

-against-

CHARLES WISELL and LIPSIG SHAPEY MANUS & MOVERMAN, P.C.,

                    Respondents.

1:23-cv-8685 (MKV)

OPINION AND ORDER
GRANTING
PETITION TO CONFIRM
ARBITRATION AWARD
AND DENYING
CROSS-PETITION TO VACATE
OR MODIFY AWARD

---

MARY KAY VYSKOCIL, United States District Judge:

    Petitioner D.C. Keenan & Associates ("D.C. Keenan") moves to confirm an arbitration award [ECF Nos. 1, 2], and Respondents Charles Wisell and Lipsig Shapey Manus & Moverman, P.C. ("Lipsig") cross-move to vacate or modify the award [ECF Nos. 11, 12, 13].  D.C. Keenan and Lipsig are law firms, and Wisell is a partner at Lipsig.  Wisell engaged D.C. Keenan to consult on a personal injury action he had filed on behalf of a Lipsig client in New York Supreme Court in exchange for a percentage of the attorneys' fees.  The parties later submitted a dispute over those fees to arbitration.  The arbitrator awarded D.C. Keenan $268,028.02.  For the reasons set forth below, the petition of D.C. Keenan to confirm the award is GRANTED, and the cross-petition of Wisell and Lipsig to vacate or modify the award is DENIED.

                    **I.**      **BACKGROUND**[1]

**A.  Facts**

    Charles Wisell is a partner of Lipsig Shapey Manus & Moverman, P.C. ("Lipsig").  Pet.

---

[1] The facts are taken from the arbitration award [ECF No. 1-3 ("Award")] and the parties' submissions. *See Squarepoint Ops LLC v. Sesum*, No. 19-cv-7317 (LAP), 2020 WL 996760, at *1 (S.D.N.Y. Mar. 2, 2020) (explaining, in resolving cross-petitions to confirm and vacate an arbitration award, that the "facts are taken from the Award and each party's submission."). The pertinent submissions include: the petition of D.C. Keenan to confirm the arbitration award [ECF No. 1 ("Petition")]; Respondents' opposition and cross-petition [ECF Nos. 11, 12 ("Resp. Mem.")]; Petitioner's opposition brief [ECF No. 15 ("Pet. Opp.")]; the complaint in the New York personal injury action [ECF

1

Opp. ¶ 18; *see* Resp. Mem. at 19. Wisell, "through his law firm," Lipsig, commenced a personal injury action in the Supreme Court of New York, Queens County, captioned *Vidal v. JRC Management, et. al.*, Index Number 706681/2019 ("Vidal Action"). Resp. Mem. at 1 (Wisell brought the case "through his law firm"); *see* Vidal Cmpl. at 2. The complaint in the Vidal Action states that "LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C." is the attorney for the plaintiff, Vidal. Vidal Cmpl. at 2.

Wisell signed a "Consult Contingent Fee Agreement" with D.C. Keenan & Associates ("D.C. Keenan") [ECF No. 1-1 ("Agreement")] in connection with the Vidal Action. Under the Agreement, D.C. Keenan would provide "consulting services" in exchange for "Thirty Three and one third percent (30%) [sic] of all attorney's fees received by Attorney" in the Vidal action. Agreement at 1. The Agreement provides that any dispute arising from it must be resolved through arbitration. *See* Agreement at 2; Award at 1.

The parties dispute whether the Lipsig firm is bound by the Agreement. Respondents assert that "Wisell alone entered into a Consult Contingent Fee Agreement" with D.C. Keenan. Resp. Mem. at 2. D.C. Keenan maintains that Wisell signed the Agreement "on behalf of Lipsig." Pet. Opp. ¶ 30. In particular, the first paragraph of the Agreement states that Charles Wisell "of Lipsig Law Firm" agrees to retain D.C. Keenan to consult on the Vidal Action. Agreement at 1. On the signature page, "Lipsig, Shapey, Manus, Moverman" appears above the signature line. Agreement at 2. Excerpts of the Agreement are reproduced below.

---

No. 13-2 ("Vidal Cmpl.")]; the parties' "Consult Contingent Fee Agreement" [ECF No. 1-1 ("Agreement")]; the engagement letter from the arbitrator [ECF No. 1-2 ("Engagement Letter")]; and a letter that Wisell sent, on Lipsig letterhead, with the firm's name in the signature line, terminating the Agreement with D.C. Keenan [ECF No. 13-32 ("Termination Letter")].

> **CONTRACT FOR LEGAL REPRESENTATION**
> (Consult Contingent Fee Agreement)
>
> Charles Wisell ("Attorney") of Lipsig Law Firm does hereby retain and employ D. C. KEENAN & ASSOCIATES, P.C. d/b/a The Keenan Law Firm, Atlanta, Georgia to consult with regard to the following matter: Vidal, Gabriel v. JRC Management et. al
>
> Attorney has entered into an attorney client contingency fee contract in the above matter receiving 33 % of the recovery.
>
> For and in consideration of the services to be rendered as described below, Attorney agrees to pay THE KEENAN LAW FIRM the following fees and incurred expenses:

Agreement at 1.

> Employment accepted on the basis of the above outline, this the 12/4 day of 2019.
>
> (Enter Law Firm) Lipsig, Shapy, Manus, Moverman
>
> By: [signature]
>
> D. C. KEENAN & ASSOCIATES, P.C.
>
> By: [signature]

Agreement at 2.

Thereafter, according to Respondents, "Wisell terminated the agreement for cause" on the ground that D.C. Keenan "did nothing whatsoever to contribute" to the case. Resp. Mem. at 2. The Termination Letter is on Lipsig letterhead and ends: "Very truly yours, LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C.," followed by Wisell's name further down the page. Termination Letter at 2. The Vidal Action later settled, Petition ¶ 15; Resp. Mem. at 2, and, thereafter, a "dispute arose concerning the fee distribution," Petition ¶ 16; *see* Resp. Mem. at 2.

3

Wisell filed an arbitration demand, and the Honorable David B. Saxe (ret.) was engaged as sole arbitrator. *See* Pet. Opp. ¶ 3; Award at 1; *see also* Engagement Letter at 1. In their briefs, the parties dispute whether Lipsig was "a proper party to the arbitration and was given a full and fair opportunity to make arguments on its behalf." Pet. Opp. ¶ 15. Respondents assert that Lipsig was "never served with a notice of intention to arbitrate" and was "not a party to the arbitration proceeding." Resp. Mem. at 3. D.C. Keenan argues Lipsig simply "chose not to present a separate arbitration submission and instead relied solely upon those filed by its partner, Wisell." Pet. Opp. ¶ 16. Notably, in the heading of the Engagement Letter, the arbitrator lists Lipsig as the petitioner and Wisell as the attorney for the petitioner. Engagement Letter at 1. In the body of the Engagement Letter, the arbitrator states that "Petitioner is represented by Charles E. Wisell, Esq." Engagement Letter at 2. Nevertheless, in that same Engagement Letter, the arbitrator named the matter "*Wisell, Charles (Petitioner) v. D.C. Keenan & Associates (Respondent)*." Engagement Letter at 1. The Award reflects that name, with Wisell alone listed as the "Petitioner" in both the caption and the main text. *See* Award at 1.

The parties to the arbitration "agreed that the Arbitrator would render a non-reasoned award to resolve" their "fee dispute." Award at 1; *see* Petition ¶ 20. They "submitted pre-Hearing briefs and evidence to the Arbitrator." Award at 1. The arbitrator held a hearing, at which "the Parties were given a full and fair opportunity to present witnesses, cross-examine witnesses, present evidence, and present arguments to the Arbitrator." Award at 2. The parties then submitted post-hearing memoranda. Award at 2.

The arbitrator issued the Award. It provides, in pertinent part: "PETITIONER is obligated to remit to RESPONDENT ten percent (10%) of the total amount received, as a legal fee, by the Lipsig Law Firm in connection with" the Vidal Action. Award ¶ 1. "Accordingly, Petitioner is

4

obligated to remit to Respondent the sum of $268,028.02." Award ¶ 1.

### B. Procedural History

Petitioner D.C. Keenan initiated this action against Respondents Wisell and Lipsig by filing a petition to confirm the Award, notice of motion, and exhibits [ECF Nos. 1, 2]. Respondents filed an opposition and cross-motion to vacate or modify the Award, accompanied by numerous exhibits [ECF Nos. 11, 12, 13]. Respondents principally argue that "the arbitrator did not have the authority to remit 10% of the legal fee received by Lipsig as the attorney of record in Vidal to [D.C.] Keenan" because "Lipsig was not a signatory the Agreement." Resp. Mem. at 13. Respondents further contend that Wisell and Lipsig "split the fee" from the Vidal Action and, therefore, "at most, the arbitration award should be reduced from $268,028.02 to $134,014.01, [representing] 10% of Wisell's fee." Resp. Mem. at 13.

D.C. Keenan filed an opposition to Respondents' cross-motion [ECF No. 15]. It argues that Wisell signed the Agreement "on behalf of Lipsig" and, as a partner, Wisell had the authority, or apparent authority, to bind Lipsig to the Agreement. Pet. Opp. ¶¶ 2, 20, 21, 26. Respondents filed a reply brief [ECF No. 16].

## II.    LEGAL STANDARD

After an arbitration award issues, Section 9 of the Federal Arbitration Act ("FAA") permits a party to petition a district court for an order confirming the award. *See STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011); 9 U.S.C. § 9. "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). The district court "must grant" a petition to confirm an award, 9 U.S.C. § 9, unless the opposing party

can show it "falls within a very narrow set of circumstances delineated by statute and case law" that permit a district court to vacate or modify an arbitration award, *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).[2] "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110.

It well established that courts must be "extremely deferential" to an arbitrator's decision. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013). "The arbitrator's rationale for an award need not be explained." *D.H. Blair & Co.*, 462 F.3d at 110. Rather, the district court must confirm the award if there is any "barely colorable justification for the outcome reached" by the arbitrator. *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 569 U.S. at 569. Such "severely limited" judicial review is necessary to maintain the essential virtues of arbitration, "namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (first quoting *ReliaStar Life Ins. Co. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) and then quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).

---

[2] Pursuant to Section 10 of the FAA, a district court may vacate an arbitration award if (1) the award was procured by corruption or fraud, (2) the arbitrator was evidently corrupt or biased, (3) the arbitrator was guilty of certain prejudicial misconduct, or (4) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)-(4). In the Second Circuit, an award can also be vacated for "manifest disregard" of the law in "exceedingly rare instances" of "egregious impropriety." *Duferco*, 333 F.3d at 389. Pursuant to Section 11, a district court may modify an award if (1) there was an evident material miscalculation, (2) the arbitrator awarded upon a matter not submitted to arbitrations, or (3) the award is imperfect in matter of form not affecting the merits. 9 U.S.C. § 11(a)-(c).

### III.  DISCUSSION

Respondents spend much of their brief attempting to demonstrate that D.C. Keenan did "nothing helpful" on the Vidal Action and any advice it gave was "bad advice."  Resp. Mem. at 10; *see id.* at 2, 3–12.  However, that discussion has almost no bearing on Respondents' arguments that the Award should be vacated or modified.  In relevant part, Respondents argue that the Court should vacate the Award because Lipsig did not sign the Agreement or participate in the arbitration.  Resp. Mem. at 15.  Respondents further argue that, since Wisell and Lipsig split the attorneys' fee from the Vidal Action "50-50," the Court should cut the award in half.  Resp. Mem. at 19–22.  As the Court explains below, Wisell signed the Agreement on behalf of Lipsig, and there is no evidence that Lipsig was denied the opportunity to be heard by the arbitrator.  Moreover, the Award does not purport to require Lipsig to pay D.C. Keenan.  Rather, it directs Wisell to pay D.C. Keenan.  If Wisell believes he should not have to pay the whole Award after splitting half the fee, his quarrel is with his law firm, not the arbitrator's decision.

#### A. Lipsig Is Bound by the Agreement.

Respondents' main argument is that "Lipsig was not a signatory to the Agreement."  Resp. Opp. at 13; *see id.* at 1, 13–16.  As such, Respondents argue, the Court should vacate the Award entirely, pursuant to Section 10(a)(4) of the FAA, on the ground that the arbitrator exceeded his power when he "improperly exerted jurisdiction and authority over Lipsig."  Resp. Mem. at 15.  As explained below, the Award directs Wisell alone, not Lipsig, to pay D.C. Keenan.  *See infra* at Section III(c).  In any event, Respondents' argument fails because Lipsig is listed as a signatory on the Agreement, and Wisell, as a partner of the firm, had the authority, or apparent authority, to bind Lipsig to an arbitration agreement.

To be sure, arbitration is a matter of contract, and a party ordinarily has "no obligation to

7

submit" to arbitration unless the party "contracted to do so." *Butchers, Food Handlers & Allied Workers Union of Greater New York & New Jersey, Loc. 174, United Food & Com. Workers Union v. Hebrew Nat. Kosher Foods, Inc.*, 818 F.2d 283, 286 (2d Cir. 1987) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)); *see Thomson–CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1995). Indeed, "an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). As such, Section 10(a)(4) of the FAA authorizes a court to vacate an arbitration award "where the arbitrators exceeded their powers," although the Second Circuit has "consistently accorded the narrowest of readings" to Section 10(a)(4). *ReliaStar*, 564 F.3d at 85.

Respondents assert that "Lipsig was not a signatory to the Agreement" with D.C. Keenan that required arbitration of the fee dispute. Resp. Opp. at 13. However, as the excerpt of the Agreement reproduced above shows, "Lipsig, Shapey, Manus, Moverman" is listed as a signatory to the agreement. Agreement at 2. The signature page reflects that two law firms, Lipsig and D.C. Keenan, entered into the Agreement, executed "By" individuals who signed the Agreement on behalf of the firms. Agreement at 2. Although Respondents assert that "Wisell alone entered into a Consult Contingent Fee Agreement" with D.C. Keenan, Resp. Mem. at 2, the first paragraph of the Agreement clearly defines Wisell as an attorney "of Lipsig Law Firm," Agreement at 1, not some independent actor. Respondents themselves submit further evidence that Lipsig was a party to the Agreement in the form of the Termination Letter, which is on Lipsig letterhead and lists Lipsig as a signatory. Termination Letter at 2.

Respondents stress that the "threshold question" of whether a party agreed to arbitrate, Resp. Mem. at 14, "is *typically* an 'issue for judicial determination'" before arbitration begins,

8

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (emphasis added) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). That is true in the typical case. But the Court is not required to vacate the Award on that basis. *See Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991); *In re Arb. between Promotora de Navegacion, S.A.*, 131 F. Supp. 2d 412, 416–17 (S.D.N.Y. 2000) (Lynch, J.); *Soleimani v. Andonian*, 2022 WL 748246, at *5 (S.D.N.Y. Mar. 10, 2022).

Contrary to Respondents' argument, Lipsig clearly is bound by the Agreement with D.C. Keenan to arbitrate the fee dispute because Wisell, a partner of the firm, signed the Agreement on behalf of Lipsig and, as such, had apparent authority to bind the firm. There is no dispute that Wisell is a partner of the firm. *See* Pet. Opp. ¶ 18; Reps. Mem. at 19. As explained above, it is clear on the face of the Agreement that Wisell signed on behalf of Lipsig.



Agreement at 2.

To the extent that Respondent Lipsig maintains that it did not sign, the Second Circuit has long "made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" *Thomson–CSF, S.A.*, 64 F.3d at 776 (quoting *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980)). As partner of the law firm, Wisell was an agent of Lipsig with the authority or apparent authority to bind Lipsig to the Agreement, including the arbitration clause. *See* N.Y. P'ship Law § 20(1); *see also Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1116 (2d Cir. 1986) ("absent awareness of facts indicating that

9

a partner is acting beyond his real or apparent authority, a third party is not obligated to investigate the matter further").[3]

Accordingly, the Court rejects Respondents' argument that Lipsig was neither a signatory to the Agreement, nor bound by its arbitration clause.

### B. The Arbitration was Fundamentally Fair.

Respondents further argue that the Court should vacate the Award on the ground that it was fundamentally unfair to Lipsig. Resp. Mem. at 16; *see* 9 U.S.C. § 10(a)(3). Respondents cite authority that "all parties" to an arbitration are "'entitled to notice and an opportunity to be heard.'" Resp. Mem. at 16 (quoting *Miss Universe L.P., LLLP. v. Monnin*, 952 F. Supp. 2d 591, 603 (S.D.N.Y. 2013)). Respondents contend that Lipsig "was never served with a notice of intention to arbitrate and was not a party to the arbitration proceeding." Resp. Mem. at 3.

Respondents' argument that Lipsig was deprived of notice and an opportunity to heard in the arbitration proceeding do not bear scrutiny. As noted above, it was Wisell, a partner of the firm, not D.C. Keenan, who filed the arbitration demand. *See* Pet. Opp. ¶ 3; Award at 1; *see also* Engagement Letter at 1. Indeed, it seems the arbitrator, at least initially, believed that Lipsig was the "Petitioner" and was "represented by Charles E. Wisell, Esq." in the arbitration proceeding. Engagement Letter at 2. Thus, the arbitrator addressed the engagement letter to "Lipsig Shapey Manus & Moverman," albeit via email to Wisell, a partner of the law firm. Engagement Letter at 1. As such, Respondents' argument that Lipsig lacked notice of the arbitration necessarily implies

---

[3] Respondents contend that Section 20(3)(e) of the Partnership Law requires all partners to sign any agreement that contains an arbitration provision to bind the law firm to the arbitration agreement. *See* Resp. Mem. at 20. The supposed authorities Respondents cite provide no support for that interpretation. *See Application of Jevremov*, 129 A.D.2d 174, 517 N.Y.S.2d 496 (1987) (ruling that the president of a corporation could not be compelled to arbitrate in his personal capacity where he signed an arbitration agreement in his capacity as president of the corporation only). The Court is not aware of any authority for Respondents' interpretation of Section 20(3)(e). At least one New York court interpreting the provision directly rejected that interpretation. *See Stein-Tex., Inc., v. Scappatillio*, 193 Misc. 402, 404, 87 N.Y.S.2d 317, 319 (N.Y. Sup. Ct. 1948).

that Wisell kept his firm in the dark about the proceeding, including by failing to inform Lipsig of the Engagement Letter addressed to Lipsig.

As the parties seeking to vacate the Award, Respondents have the "very high" burden of proof. *D.H. Blair & Co.*, 462 F.3d at 110. However, they offer no evidence that Lipsig lacked notice of the proceeding or was denied the opportunity to participate. Indeed, the evidence in the record before the Court suggests the opposite. Moreover, "there is no evidence that, at any point before or during the arbitration, [Lipsig] objected to the process, refused to arbitrate or made any attempt to seek judicial relief." *Gvozdenovic*, 933 F.2d at 1105.

Moreover, the parties to the arbitration were given a full and fair hearing. They submitted pre-hearing briefs and evidence. Award at 1. The arbitrator held a hearing at which the parties were given the opportunity to present witnesses, cross-examine witnesses, present evidence, and present arguments. Award at 2. The parties also submitted post-hearing briefs. Award at 2. There is no indication that Respondents asked the arbitrator to clarify or modify the Award. There is no reason for this Court to vacate the Award as fundamentally unfair.

### C. The Award Does Not Bind Lipsig and Is Not Irrational.

In any event, even if Lipsig did not sign the Agreement or participate in the arbitration, the Award does not purport to order Lipsig to pay D.C. Keenan anything. Rather, the Award provides, in pertinent part that "PETITIONER," defined in the Award as Wisell, "is obligated to remit to [D.C. Keenan] ten percent (10%) of the total amount received, as a legal fee, by the Lipsig Law Firm in connection with" the Vidal Action. Award ¶ 1. Therefore, Wisell "is obligated to remit to [D.C. Keenan] the sum of $268,028.02." Award ¶ 1.

Respondents attempt to sew confusion, arguing that the Award irrationally directs Wisell to "force Lipsig to pay" D.C. Keenan. Resp. Mem. at 19. This argument is based on Respondents'

11

representation that Wisell and Lipsig "split the attorneys' fee" from the Vidal Action "50-50." Resp. Mem. at 8, 19. However, that arrangement is immaterial to this case.

The arbitrator directed Wisell to pay D.C. Keenan ten percent of the "total" fee from the Vidal Action. Award ¶ 1. The Award refers to the attorneys' fee "received . . . by the Lipsig Law Firm," Award ¶ 1, because Lipsig was listed as Vidal's attorney in that case, *see* Vidal Cmpl. at 2. Indeed, Respondents seem to acknowledge that the "legal fee [was] received by Lipsig as the attorney of record in Vidal." Resp. Mem. at 13.

The Award directs Wisell to pay ten percent of the total fee from the Vidal Action. Award ¶ 1. The Award does not direct Lipsig to pay D.C. Keenan, nor does it require Wisell to "force" Lipsig to pay. Resp. Mem. at 19; *see Soleimani*, 2022 WL 748246, at *6. Insofar as Respondents agree between themselves that Lipsig was not a party to the Agreement or the arbitration, Wisell can simply comply with the Award, which, by its terms, does not require Lipsig to do anything. *See Porzig*, 497 F.3d at 141. If, as Respondents represent, Wisell and Lipsig split the total fee "50-50," Resp. Mem. at 19, then the Award requires Wisell to pay D.C. Keenan twenty percent of his half of the fee, or to come to an agreement with his firm to share the burden of complying with the Award. The Award is not irrational; it is simply disappointing to Wisell.

There is no reason to vacate or modify the Award. The parties, or, at minimum, Wisell and D.C. Keenan "bargained for the arbitrator's construction" of the Agreement. *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp.*, 954 F.2d at 797). They "must now live with that choice." *Oxford Health Plans LLC*, 569 U.S. at 573.

Respondents may not relitigate here whether D.C. Keenan is entitled to a portion of the fees from the Vidal Action despite Respondents' position that D.C. Keenan did not help with the case. That would defeat the purpose of arbitration. *See Scandinavian Reinsurance Co.*, 668 F.3d

12

at 71–72. The Court "must grant" the petition to confirm the Award, 9 U.S.C. § 9, because Respondents have failed to meet their heavy burden to show that this case falls within any of the narrow circumstances in which the Court has authority to vacate or modify the Award, *see Duferco Int'l Steel Trading*, 333 F.3d at 388.

## IV.   CONCLUSION

For the reasons set forth above, Petitioner's request to confirm the Award is GRANTED, and Respondents' cross-petition to vacate or modify the Award is DENIED.

The Clerk of Court respectfully is requested to terminate all open motions and to close this case.

**SO ORDERED.**

**Date: September 20, 2024**
**New York, NY**

*/s/ Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**